UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN LABRECHE,
    Plaintiff,

v.

RICHARD BROUILLETTE and 122
NORWOOD ASSOCIATES, LLC
    Defendants.

C.A. No. 1:21-CV-00277-JJM-LDA

## MEMORANDUM and ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

The question presented here is whether John Labreche was an employee of Richard Brouillette and/or his company Norwood Associates, LLC (collectively, "Mr. Brouillette"), or an independent contractor. After careful review of all the evidence presented, the Court concludes that, while it is a close call, Mr. Labreche has raised sufficient evidence that a jury should answer the questions.

For 41 years, from 1982 until 2023, Mr. Labreche lived and worked on Richard Brouillette's property at 122 Norwood Avenue in Cranston, R.I. ("Norwood Property"). He made repairs, did maintenance work, performed minor construction projects, and managed the rentals of property that Mr. Brouillette owned. While performing this work at the Norwood Property, Mr. Labreche also worked on Mr. Brouillete's property in New Hampshire. ECF No. 1 at 2; ECF No. 50-2 at 2, ¶ 7.

In 2020, Mr. Brouillette sent a letter to Mr. Labreche ordering him to cease work on the property and ending his role as property manager. So, Mr. Labreche

sued claiming that, as an employee of Mr. Brouillette, he owes him at least minimum wage compensation for labor under the Rhode Island Payment of Wages Act, § 28-14-1, et seq. ("RIPWA") for the projects he undertook. *Id.* at 4. Before this Court is Mr. Brouillette's Motion for Summary Judgment.[1] ECF No. 47. Mr. Brouillette alleges that Mr. Labreche was an independent contractor under RIPWA, and therefore RIPWA does not protect him as a matter of law. In response, Mr. Labreche asserts that there is sufficient evidence to produce genuine issues of fact about his employment status and asks this Court to deny summary judgment. ECF No. 50.

## I. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is proper if after adequate time to prepare, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A dispute is genuine when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks

---

[1] Mr. Labreche had alleged that Mr. Brouillette created an oral contract to sell the Norwood Property to him at a reduced rate. Mr. Labreche conceded that the statute of fraud preempts him from raising this claim, and so the Court dismisses Count 2 of the complaint. ECF No. 50-1 at 15.

2

omitted) (citations omitted). That said, "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court considers facts "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995). A fact is material when it "might affect the outcome of the suit under the governing law." *Morris*, 27 F.3d at 748 (internal quotation marks omitted) (citations omitted). Ultimately, a dispute of material fact "is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

Summary judgment must also be proper as a matter of law. The Court first considers if the nonmoving party has produced "a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Celotex*, 477 U.S. at 1319.

## II.  DISCUSSION

The primary issue to be decided is whether Mr. Labreche is an employee and thus entitled to receive the protections of RIPWA, which is a mixed question of law and fact. *Narayanasamy v. Issa*, 435 F. Supp. 3d 388, 390 (D.R.I. 2020) (quoting *DiOrio v. R. L. Platter, Inc.*, 211 A.2d 642, 644 (R.I. 1965) ("whether a relationship

3

between parties constitutes an employer-employee relationship is a mixed question of fact and law and 'depends in each case upon its particular facts taken as a whole.'"). Under the RIPWA, the relevant analysis "focuses on the employer's right or power to exercise control over the method and means of performing the work." *Sebren v. Harrison*, 552 F. Supp. 3d 249, 257 (D.R.I. 2021) (citation and quotes omitted). The employer-employee relationship test is measured by "the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control." *Absi v. State Dep't of Admin.*, 785 A.2d 554, 556 (R.I. 2001) (quoting *Pasetti v. Brusa*, 98 A.2d 833, 834 (R.I. 1953)).

This circuit also employs the "economic reality" test to decide whether a worker is an employee. *See, e.g.*, *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Sigui v. M + M Communications, Inc.*, 484 F. Supp. 3d 29, 36 (D.R.I. 2020). "The touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *McFeeley v. Jackson Street Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016) (quoting *Schultz v. Cap. Int'l. Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006)). Relevant to the analysis of the economic reality test is: (i) the degree of control exercised by the alleged employer; (ii) the extent of the relative investments of the worker and alleged employer; (iii) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (iv) the skill and initiative required in performing the job; (v) the permanency of the relationship; and (vi) the degree to which the alleged employee's tasks are integral to the

4

employer's business. *Sigui*, 484 F. Supp. 3d at 36. Both parties have agreed that the *Sigui* factors apply.

This Court will now consider the facts in the record before the Court that are relevant to each category to decide whether Mr. Labreche's employment status can be decided as a matter of law, or whether a jury should decide it. The Court tells these facts in the light most favorable to the nonmoving party–Mr. Labreche–with all reasonable inferences drawn in his favor. *LeBlanc v. Great Am. Ins.*, 6 F.3d 836, 841 (1st Cir. 1993) ("review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor.").[2]

### 1. Whether Mr. Brouillette had the *right to control* Mr. Labreche

The first factor of the economic reality test is the degree of control an alleged employer has or exercises over the worker. The primary inquiry is whether "[W]orkers [are] subject to control such that they did not stand as 'separate economic entities' who were 'in business for themselves.'" *Sigui*, 484 F. Supp. 3d at 37 (citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1313 (11th Cir. 2013)). At issue is whether Mr. Brouillette had the right to exercise the day-to-day control over the means and methods used by Mr. Labreche. Mr. Labreche alleges the facts below would allow a jury to decide that the nature of the working relationship was one of employer-employee.

### 2. Mr. Labreche's Opportunity for Profit or Loss

---

[2] Mr. Brouillette argues that Mr. Labreche determined his own pay, had complete discretion and control over his work, set his own schedule, and the parties never reached an employment agreement.

This factor focuses on whether the worker "had an opportunity for greater profits" based on managerial skills. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 808 (6th Cir. 2015). Mr. Labreche did not perform any work for others, he only worked for Mr. Brouillette. Mr. Brouillette paid Mr. Labreche a flat rate regardless of the vacancy status of the rental properties Mr. Brouillette instructed him to rent out. ECF No. 50-1. Mr. Brouillette did not pay Mr. Labreche any more (or less) depending on his success at renting out Mr. Brouillette's apartments. He had no opportunity to make a profit through his work. This factor favors Mr. Labreche's claim that he was an employee.

### 3. The Worker's Investment in the Business

A worker's capital investment into the business shows signs of economic independence. *Sigui*, 484 F. Supp. 3d at 39. Courts "must compare the worker's investment in the equipment to perform his job with the company's total investment." *Id.* (quoting *Keller*, 781 F.3d at 810). This Court weighs this factor by comparing the investments made, and if Mr. Labreche's contributions are "starkly outweighed" by Mr. Brouillette, it points to employment status. *Id.* at 40.

Mr. Labreche made little to no investment in the business. Mr. Labreche's only investments in the performance of work for Mr. Brouillette were the use of hand tools, some occasional minor expenditures, and his own labor.[3] ECF No. 50-3 at ¶ 13-16.

---

[3] Tools, equipment, and vehicles owned or bought by a worker are detrimental to but not defeating of the worker's claim. *See Sigui*, 484 F. Supp. 3d at 39 ("worker investments in standard tools and other equipment, including vehicles that can also be used for personal use are not fatal to a claim of employee status."); *see also Roeder v. DIRECTV, Inc.*, No. C14-4091-LTS, 2017 WL 151401 at 17 (N.D. Iowa Jan. 13

6

Mr. Brouillette requested Mr. Labreche bill him for the work materials used, and he usually reimbursed him. ECF No. 50-1 at ¶ 8. Additionally, Mr. Labreche used Mr. Brouillette's truck to perform work, and he later gifted the truck to Mr. Labreche. *Id.* at ¶ 18. Mr. Brouillette also supplied the rental agreements for Mr. Labreche to rent to new tenants. ECF No. 50-1 at 14. These facts point to Mr. Labreche's financial dependency on Mr. Brouillette, and favor Mr. Labreche's position that he was an employee.

### 4. The Degree of Skill and Independent Initiative Required to Perform Work

The next factor considers whether there was "'initiative, judgment[,] or foresight of the typical independent contractor,' or whether his work 'was more like piecework.'" *Sigui*, 484 F. Supp. 3d at 40 (quoting *Keller*, 781 F.3d at 809). "The manner in which the skill is gained is crucial: an independent contractor is more likely to have gained the relevant skill through 'formal education, an apprenticeship, or years of experience,' but 'if the worker's training period is short, or the company provides all workers with the skills necessary to perform the job,' the worker is more likely an employee." *Sigui*, 484 F. Supp. 3d at 40 (quoting *Keller*, 781 F.3d at 809).

---

2017) (determining "vehicles had been purchased prior to taking DIRECTV work orders and the record does not establish plaintiffs purchased them solely for the purpose of performing DIRECTV work."); *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998) (reasoning "[a]lthough the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes."); *Parrilla*, 2009 WL 2868432 at 4.

Mr. Labreche left his contracting company, JFL builders, to work for Mr. Brouillette after owning it for ten years. ECF No. 48-2 at 6 (pp. 18-19). Prior to working for Mr. Brouillette, Mr. Labreche also earned a bachelor's degree in industrial technology. *Id.* (p. 17:9). Mr. Labreche had no property management experience other than contracting experience at JFL. *Id.* (p. 18:7). Aside from the contracting work, Mr. Labreche claimed he followed Mr. Brouillette's instruction, having no training in collecting rents or other property management responsibilities. *Id.* at 22 (p. 82:17-24, 83:17-24). Because Mr. Labreche gained at least some skills under the guidance or during the experience of working for Mr. Brouillette, this factor points toward employment.

### 5. The Permanence or Duration of the Working Relationship

"Generally, independent contractors have variable or impermanent working relationships with the principal company because they 'often have fixed employment periods and transfer from place to place as work is offered to them, while 'employees' usually work for only one employer and such relationship is continuous and indefinite in duration.'" *Keller*, 781 F.3d at 807 (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir.1998)).

From 1982 to 2023 Mr. Labreche lived in Mr. Brouillette's Norwood Property. ECF No. 50-1 at 13. Mr. Labreche worked for Mr. Brouillette for over 30 years and forwent the prospect of working for other entities or people during the period he worked at the Norwood Property. *Id.* Despite not being precluded from seeking other forms of employment, Mr. Labreche claims that he effectively invested much of his

8

life's work, as would an employee, in exchange for having a place to live in and a steady stream of compensation.

### 6. The Extent to Which the Work is an Integral Part of the Employer's Business

"The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Keller*, 781 F.3d at 815. Mr. Brouillette's business was the maintenance and rental of his real estate properties. Mr. Labreche's work, he argues, was integral to this business; another factor pointing toward employment.

### 7. Additional Factors and the Totality of the Circumstances

Mr. Brouillette does not contest that he had allegedly been 'paying' Mr. Labreche in an unascertained dollar credit to the purchase price of his property that Mr. Labreche lived in for almost forty years. This contributes to Mr. Brouillette's exercise of control under the circumstances, as it reflects Mr. Labreche's lack of financial independence from Mr. Brouillette as tenant and property manager. Mr. Labreche worked and lived on Mr. Brouillette's property, did not work for anyone else, used Mr. Brouillette's truck, and Mr. Brouillette reimbursed him for most expenditures. Although Mr. Brouillette resided in Florida for most of their working relationship, Mr. Brouillette had the discretion of how much and whether to pay Mr. Labreche by writing checks, did not allow or require Mr. Labreche to make his own expenditures toward the projects, instructed him to collect rents, and did not provide opportunities to earn more money.

Questions of fact exist for the jury to decide the level of control, economic reality, and whether there was an employment arrangement formed. The dispute also produces credibility issues, which "this Court cannot do on a motion for summary judgment." *Sigui*, 484 F. Supp. 3d at 42; *see also Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) (court "should not engage in credibility assessments" when deciding on summary judgment).

Genuine disputes of fact remain for a jury to determine.

### III. CONCLUSION

Under the economic reality test, Mr. Labreche was dependent for his income and employment on Mr. Brouillette for over thirty years. Mr. Labreche has set forth evidence on which a jury could conclude that Mr. Brouillette had the right to exercise control over the methods and means of Mr. Labreche performing his work. Thus, this Court DENIES Defendants' Motion for Summary Judgment. ECF No. 47.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

July 31, 2024

10